## THE PEOPLE *v.* JAMES CARROLL.

On a complaint against a person as a disorderly person, if the charge be sustained, a magistrate may require sureties for good behavior for one year, and, in default of such sureties being given, may commit to jail; but he cannot proceed to organize a court of special sessions, and, on conviction, punish the accused by fine and imprisonment.

To warrant a conviction as a disorderly person, the complaint must bring the case within some of the specifications enumerated in the statute as constituting the offence.

On a trial before a court of special sessions, a party cannot object that an answer to the question asked may involve the witness in a criminal prosecution. Such an objection can only be made by the witness. Nor can a witness claim such a privilege, where the answer is necessary to a full understanding of the facts already voluntarily stated by the witness, although the answer may tend to criminate the witness.

If a witness has testified to a part of a transaction or of a series of transactions which implicate the accused, the latter has a right to show, by a cross-examination of the same witness, that the criminality was on the part of the witness and not of the accused.

Forms of complaint and warrant before a magistrate, and of a *certiorari* to remove proceedings after conviction before a court of special sessions.

THIS cause came up on *certiorari* to a court of special sessions. The writ was allowed on affidavit, and was in the words following:

The People of the State of New-York to Alexander Frink,

[L. S.] Esq., a justice of the peace of the county of Albany, Greeting:

We, having been informed that James Carroll of said county was lately, in a Court of Special Sessions of the Peace, held before you, convicted of disorderly conduct in abandoning his wife; and being willing, for certain causes, to be certified of the said conviction, and of the complaint, proceedings and judgment against the said James Carroll, do command you that the said complaint, proceedings, evidence, conviction and judgment, with all things touching the same, by whatsoever name the party may be called therein, you send to our justices of our Supreme Court, distinctly and plainly under your hand and seal, and that you cause this writ and the affidavit delivered to you therewith, and your return, to be filed, in the office of the clerk of our Supreme Court of Judicature at Albany, within twenty days after the service of this writ.

Witness, Amasa J. Parker, presiding justice of our said court, at Albany, the fifth day of June, A. D. 1855.

R. HARPER, *Clerk.*

*D. McElwain,* for the defendant.

To this writ the justice made the following return:

*Albany County, ss:*

The undersigned justice of the peace, named in the annexed writ, hereby certifies and returns to the Supreme Court: That James Carroll, of said county, was, on the 30th day of May, 1855, brought before him by virtue of the warrant hereto annexed, marked A, which was issued upon the complaint, on oath and in writing, of Frances Carroll, the wife of the said James Carroll, which is hereto annexed, marked B; and that the said James Carroll, after having been required by him, omitted, for twenty-four hours there-

after, to give bail for his appearance at the next criminal court having cognizance of said offence, and thereupon the undersigned, on the 1st day of June, 1855, at his office, in the village of Cohoes, in said county, duly organized a Court of Special Sessions, for the trial of the said James Carroll for the offence specified in said complaint and warrant; and the said court having been organized, the undersigned caused the said James Carroll to be brought before him for trial; and the charge made against the said James Carroll, as stated in said complaint and warrant, was then and there distinctly read to him, and he was required to plead thereto, and the said James Carroll plead thereto not guilty, which plea the said court entered on his minutes. The counsel for the said James Carroll then moved that the prisoner be discharged, on the ground that the affidavit and complaint on which the warrant was issued cannot be made by the wife against her husband. Defendant's counsel then moved that the prisoner be discharged, on the further ground that there was no law authorizing his arrest on the complaint before the court. Both these motions were denied, and the prisoner's counsel excepted. And the said James Carroll having demanded to be tried by a jury, a *venire* was issued according to the statute in such case made and provided, and a jury duly and legally summoned, drawn, tried and sworn; and the jury sat together and heard the proofs and allegations in the case, which were delivered in public, and in the presence of the defendant.

*Frances Carroll*, the wife of the defendant, was offered as a witness on the part of the people, to which the defendant's counsel objected, on the ground that she was the wife of the defendant. The undersigned overruled the objection, and the witness then, being duly sworn and examined, testified as follows:

I reside in Cohoes, Albany county and State of New-York; am the wife of the defendant; I have lived with the defendant some fifteen years as his wife; I have had eight children by the defendant, four of which are still living; I

am not now living with the defendant, for he has turned me out of doors, or out of his house; I am now living with strangers; I was turned out of defendant's house on the 23d day of August, 1854; I was arrested, at the instance of the defendant, and taken before Justice Phelps; I do not know what I was arrested for; I was sent to jail.

*Question.* How long did you remain in jail?

Objected to by defendant's counsel, on the ground that the justice's docket is higher evidence, and should be produced, and not proved by parol. Objection sustained, and witness proceeded as follows:

After I came out of jail, I went to Mr. Bortel's; Mr. Bortel called on the defendant and asked him to pay my board, and the defendant refused; I have called upon the defendant since that time, and tried to live with him, and he told me to go out of his house, and he said he hoped God would strike him dead if he ever lived with me one night in his house; this conversation took place in the defendant's store; the defendant said he would have me arrested if I did not leave the store; I have called on the defendant several times for money to pay my board, and he refused to do so; I have asked the defendant several times, and also asked him to let me see my children, and he always refused to let me see one of them; I have also called repeatedly on the defendant for my clothes, and he has refused to let me have them.

The docket of Justice Hubbard was here introduced in evidence, which showed that the defendant had been arrested, tried and convicted on a charge of disorderly conduct, and abandonment of his wife, and sentenced to the penitentiary for the space of thirty days, on the 27th day of October, 1854.

The witness was then questioned further, and answered as follows: Defendant has put me out of his store repeatedly; I went into defendant's store with several ladies, when defendant took me by the shoulders and pushed me out; defendant has not pushed me out within the last three weeks, but has

ordered me out; defendant has neglected to pay board; it is three weeks to-day since the defendant paid my board; he has repeatedly refused to give me my clothes; I have asked him repeatedly for money to pay my board, but he has refused to furnish it; he keeps two women, that live with him part of the time; since I left, defendant has had three women with him; I have no way of getting a living; I have been at work in a factory, but have been discharged; I have applied to the overseer of the poor several times for relief; he refused to grant me relief; I am now dependent for a living on the inhabitants of this village.

The witness was then *cross-examined*, and testified as follows: The name of the girl with whom the defendant took improper liberties is Maria Kimey.

*Question,* by defendant's counsel: Did you threaten to poison or destroy the defendant and his children?

Plaintiff's counsel objected, because: First. It would involve the witness in a criminal prosecution; Second. It is not explicit, and is irrelevant unless it has been shown to have been done within the last three weeks. Objection sustained; defendant's counsel excepted.

*Question.* Did you not threaten to set the store on fire, and burn up the goods, when the defendant went to New-York?

Plaintiff's counsel objected, because: First. It is irrelevant; Second. It is not explicit; Third. The witness is exonerated from answering it; for, if answered, it would involve her in a criminal prosecution. Objection sustained; defendant's counsel excepted.

*Question.* Did you not throw a kettle of hot water on defendant when he was coming up stairs to get his breakfast?

Plaintiff's counsel objected, because: First. It is irrelevant; Second. It would involve plaintiff in a criminal prosecution. Objection sustained; defendant's counsel excepted.

*Question.* Did you not throw a pan of coals and ashes on defendant's head as he was coming up stairs to get his breakfast, at another time?

Objection sustained; same decision as above; defendant's counsel excepted.

*Question.* Did you not lock up one of the children in a dark room, and refuse to let defendant see it, or to provide food for it, or have it nursed, so that it came near being starved to death? This was the youngest child.

Objected to, because it is irrelevant, unless it is shown to have been done within the last three weeks. Objection sustained; defendant's counsel excepted.

*Question.* Did you not tear up two or three dresses which defendant gave you when you left?

Objected to as irrelevant. Objection sustained; defendant's counsel excepted.

*Question.* Did you not tell the defendant that you meant to be as ugly as you could be, in order to make defendant drive you away, and so that you could make him support you?

Objected to as irrelevant. Objection sustained; defendant's counsel excepted.

The defendant has four children. The eldest is eight years of age, the next youngest is between five and six years of age, the next youngest between three and four years of age, and the youngest is two years of age.

*Question.* Did you not threaten to leave the defendant and go to work in the factory, since the birth of the youngest child, or last fall?

Objected to as irrelevant. Objection sustained; defendant's counsel excepted.

Defendant takes care of his children, and supports them since the separation, and does so now.

*Henry C. Conde* was next sworn for the people, and testified as follows: I heard the defendant say, during the conversation, that he was paid fifty dollars a month for tending that store.

On his *cross-examination,* he testified as follows: I am attorney in this case, on the part of the people; defendant

might have said that it took all that to support his children and himself, and pay house rent, and hire nurses, and for clothing.

The foregoing is substantially all the testimony given in the said cause when the testimony was closed. The defendant's counsel moved to have the prisoner discharged, on the ground that the act of the legislature in relation to the village of Cohoes, passed July 1st, 1851, and under which these proceedings have been had, has been repealed by the act passed in 1855. This motion was denied, and the case was submitted to the jury; who, after hearing the said proofs and allegations, retired, and were kept together in a convenient place, under the charge of a constable duly sworn for that purpose, until they had agreed upon their verdict. And the said jury, when they had agreed upon their verdict, came into the said court, and delivered the same publicly, and by such verdict they found the said James Carroll guilty of the offence wherewith he was charged as aforesaid. Whereupon the said James Carroll was remanded into the custody of the constable, and the court was adjourned until the second day of June, instant, at nine o'clock, A. M., at which time he was again brought into court. Whereupon the said court did adjudge and order that the said James Carroll should pay a fine of twenty-five dollars, or be imprisoned in the penitentiary of Albany county for ninety days.

All which the undersigned sends, as by the said writ he is commanded.

Dated at Cohoes, this 1st day of August, 1855.

ALEXANDER FRINK, [L. S.]
*Police Justice.*

## SCHEDULE A.

ALBANY COUNTY,  
*Town of Watervliet,* } *ss :*

*To the Sheriff or any Constable of said County, Greeting :*

Whereas complaint, on the oath of Frances Carroll, has been made before the undersigned, justice of the peace and police justice of said town, on the 30th day of May, 1855, at Cohoes, in said county, that James Carroll is her husband, and that he has abandoned her at Cohoes, Albany county ; that he neglects and refuses to provide for her according to his means, and that he has for two weeks last past, at Cohoes, refused to pay her board and to support her ; that he has, for several months last past, refused to permit her to reside with him and to associate with her children ; and that he retains her clothing and refuses to let her have the same, and is a disorderly person within the intent and meaning of the statute.

These are therefore, in the name of the people of the State of New-York, to command you forthwith to take the said James Carroll, and to bring him before me, at my office in said town, to answer unto the matter contained in said complaint, and to be further dealt with according to law.

Dated at said town, the 30th day of May, 1855.

A. FRINK,  
*Police Justice and Justice of the Peace.*

## SCHEDULE B.

ALBANY COUNTY, *ss :*

*Frances Carroll,* of Cohoes, in said county, being duly sworn, says : That James Carroll is her husband, and that he has abandoned her at Cohoes, Albany county ; that he neglects and refuses to provide for her according to his means ; that he has for two weeks last past, at Cohoes, refused to pay her board and to support her ; that he has, for several months last past, refused to permit her to reside

with him and to associate with her children, and he retains her clothing and refuses to let her have the same, and is a disorderly person within the intent and meaning of the statute. She therefore prays that the said James Carroll may be arrested and dealt with according to law.

FRANCES CARROLL.

Sworn to before me, this 30th ⎱
    day of May, 1855.     ⎰

ALEX. FRINK, *Justice and Police Justice.*

*D. McElwain,* for the defendant.

I. The justice erred in not discharging the prisoner, as Frances Carroll, the wife of the prisoner, could not make an affidavit in this case on which the defendant could be arrested, nor could she be a witness against her husband in any case, except where he threatens or commits personal violence. (*Barb. Cr. L.,* 383–452, *ed. of* 1841; 2 *Kent's Com.,* 178, 9, *ed. of* 1844; *The People* v. *Carpenter,* 9 *Barb.,* 580; 2 *Bright on Husb. and Wife,* 42, *ed. of* 1850; 1 *Phil. Ev., ch.* 5, § 3, *p.* 71, *9th. ed.*)

II. The justice erred in not discharging the prisoner on motion of defendant's counsel, as the complaint was made and prosecuted under an act to amend the act incorporating villages, so far as relates to the village of Cohoes, passed July 1st, 1851. (*Laws of* 1851, 675, § 7); which act was repealed by an act passed April 12th, 1855. (*Laws of* 1855, 631, § 97.)

III. The justice erred in excluding the evidence on the cross-examination of Frances Carroll.

IV. The defendant could not be twice tried and punished for the same offence.

V. It cannot be said that the complaint was received under the Revised Statutes, as there is nothing in the complaint or proof showing that the defendant threatened to

run away, and leave his wife or children a burden on the public. (1 R. S., 819, ed. of 1846.)

H. Harris (District Attorney), for the people.

By the Court, PARKER, J.—This case abounds in error. The complaint charged against the defendant no crime or misdemeanor which courts of special sessions are authorized to try. (2 R. S., 711.) It was only, at most, a complaint against him as a disorderly person, and, if enough was set forth, it was the foundation for a summary proceeding under 1 Revised Statutes, 819. If, on the return of the warrant, it had appeared by the confession of the defendant, or by competent testimony, that the defendant was a disorderly person, as charged, the justice might have required sufficient sureties for his good behavior for one year, in default of which he might have committed him to jail; and this was all he could do. But the justice, mistaking entirely his powers and the character of the offence, organized a Court of Special Sessions, required the defendant to plead to the complaint, and, after the trial, sentenced him to pay a fine of twenty-five dollars, or be imprisoned in the penitentiary of Albany county for ninety days.

It is even doubtful whether there was enough in the complaint, if established, to convict the defendant of being a disorderly person. The charge was that he had abandoned his wife, and neglected and refused to provide for her, and that for two weeks he had refused to pay her board and support her, and that he had refused for several months to permit her to reside with him and to associate with her children, and retained her clothing and refused to let her have the same, and that he was a disorderly person. None of these specifications come within those enumerated in the statute. (1 R. S., 638.) The statute declares those to be disorderly persons who threaten to run away and leave their wives or children a burden to the public. No threats are

The People *v.* Carroll.

alleged in this case. The complaint was evidently drawn under the seventh section of the act of 1851, amending the charter of the village of Cohoes (*Laws of* 1851, 577), which declared all persons who should actually abandon their wives and children in said village, or who should refuse or neglect to provide for them, &c., to be disorderly persons. But that act was repealed on the 12th of April, 1855 (*Laws of* 1855, 663), more than a month before these proceedings were instituted.

Without deciding the question whether the wife of the defendant was a competent witness against him, in a case where no personal violence was alleged ( *The People* v. *Carpenter*, 9 *Barb.*, 580 ), it is quite certain that the justice excluded proper testimony on the cross-examination. The defendant's counsel had a right, after hearing her statement of the conduct of the defendant, to require her to answer further such questions as tended to show that her own conduct had provoked, or that it justified, the conduct of the defendant. A party cannot object that an answer to the question asked may involve the witness in a criminal prosecution. Such an objection may be made by the witness, but not by the party; nor can even a witness claim such a privilege where such further examination is necessary to understand the facts already voluntarily stated. If a witness has stated a part of a transaction, or of a series of transactions, which implicate the defendant, the latter has a right to show, by a cross-examination of the same witness, that the fault and even the criminality were on the part of the witness and not of the accused. (1 *Cow. & Hill*, 734, 5.)

The conviction must be reversed.

Conviction reversed.